PASSOV ET AL., APPELLANTS, *v.*
PARIS DEVELOPMENT CORPORATION
ET AL., APPELLEES.

(No. 54414—Decided
October 24, 1988.)

*Timothy J. Howard* and *Robert S. Passov,* for appellants.
*Robert L. Musser* and *Christopher L. Gibson,* for appellees.

PATTON, J. This appeal is brought by plaintiffs-appellants, Robert S. Passov and his wife, who assign as error the granting of summary judgment rendered in favor of defendant-appellee city of Pepper Pike.

In July 1981, defendant Julius Paris[1] submitted a preliminary plan to subdivide certain property in Pepper Pike. The preliminary plan showed sanitary sewers placed in accordance with the applicable law. Pepper Pike City Council passed Ordinance No. 1981-39 approving the final plat on October 21, 1981, subject to the provisions of Pepper Pike Codified Ordinance 1105.04 which required the developer to furnish performance guarantees for the construction of improvements not completed at the time of approval. To that end, Paris Development Corporation entered into an agreement dated November 2, 1981 with the Ohio Savings Association and

---

[1] The complaint named as defendants Julius Paris, Paris Development Corp., the city of Pepper Pike, and Union Standard Title Agency, n.k.a. U.S. Title Agency, Inc. All defendants save Pepper Pike were dismissed on August 4, 1987.

the city of Pepper Pike whereby the sum of $65,000 would be kept in an account pending completion of the improvements, namely the sanitary sewer. The agreement was to last eighteen months from date of signing. The agreement provided that in the event of a default by Paris, Ohio Savings Association could succeed to Paris's rights and, at its option, complete the construction of the improvements. The agreement further provided that should Ohio Savings Association elect not to complete the improvements, the city would have the right to utilize the proceeds to complete the improvements.

Appellants purchased a lot in the subdivision and sought to commence construction of a house. The purchase agreement specifically referred to the November 2, 1981 performance guarantee and made transfer of title conditional upon completion of the improvements. Paris did not complete the improvements, and the performance guarantee expired on May 2, 1983, with neither Ohio Savings Association nor the city choosing to exercise its right to complete the improvements.

In 1984, Paris and appellants apparently agreed to install a septic system. An application for a septic system was submitted to Cuyahoga County and accepted. However, Paris and appellant could not agree upon which party would pay the cost of the system, and appellants filed suit on September 30, 1986.

The complaint, as it relates to this appeal, alleged that the city was negligent in not enforcing the November 2, 1981 performance guarantee; that the city participated in a breach of contract with Paris, to which appellants were third party beneficiaries; and conspiracy to breach the contract.

## I

As an initial matter, Pepper Pike contends that this appeal was not timely filed in accordance with the thirty-day filing period set forth in App. R. 4(A). Following discovery, both parties filed motions for summary judgment. The trial court granted summary judgment in Pepper Pike's favor on May 22, 1987. However, since other defendants remained, that was not a final appealable order. See Civ. R. 54(B). On June 11, 1987, a half-sheet journal entry was filed stating: "Settled and Dismissed with Prejudice. Costs to each party. J.E.T.B.S. *Final.*" (Emphasis *sic.*) On August 4, 1987, the parties to the June 11, 1987 dismissal filed a stipulation of dismissal as to certain defendants and supplemental judgment entry pursuant to Civ. R. 41(A)(1)(b). It was signed by the parties and the judge. Pepper Pike contends that this appeal should have been taken from the June 11, 1987 judgment entry and not the August 4, 1987 judgment entry. We disagree.

Since there was no Civ. R. 54(B) determination of "no just reason for delay" relative to Pepper Pike's motion for summary judgment, the date on which the time to bring the appeal started running was contingent upon the disposition of the case for the remaining parties. On June 11, 1987, the parties agreed to a voluntary dismissal pursuant to Civ. R. 41(A)(1)(b). That rule requires the filing of a stipulation of dismissal signed by all parties who have appeared in the action or who still remain in the action at the time of dismissal. Thus, while the parties apparently agreed to the dismissal, it was not final until signed by the parties on August 21, 1987. Accordingly, the summary judgment granted in favor of Pepper Pike did not become final until that date. Since this appeal was filed within thirty days of August 21, 1987, there was no violation of App. R. 4(A).

## II

Turning to the merits of the ap-

peal, appellants contend that the trial court erred in granting summary judgment since genuine issues of material fact exist relating to Pepper Pike's handling of the performance guarantee agreement. In particular, appellants maintain that the city was negligent in not enforcing the agreement with Paris and that it knowingly conspired to refrain from requiring Paris to install the sanitary sewers. These contentions are without merit.

In reviewing the evidence in the light most favorable to appellants, we find no genuine issues of material fact exist. The November 2, 1981 performance guarantee agreement was executed as required by Pepper Pike Codified Ordinance No. 1105.04(A):

"* * * The developer may obtain conditional approval of the plat and install the required improvements before applying for approval of the final plat, or, alternatively, he may apply for approval of the final plat and drawings and specifications of required improvements concurrently and furnish performance guarantees that he will install the improvements thereafter. * * *"

Council's final approval of the plat may not be granted until construction of the improvements is guaranteed. Pepper Pike Codified Ordinance 1105.04(C).

The November 2, 1981 agreement[2] provided:

"4. If Paris defaults in the performance of its obligations to the City, and the Association does not elect to complete construction as provided in paragraph 3 above, *the City shall have the right* to utilize the proceeds of the foresaid loan to a maximum of Sixty-Five Thousand Dollars ($65,000.00),

less any disbursements made by the Association hereunder to the time that notice of said default is received by the Association, for the completion of such construction in accordance with the plans and specifications, including payment of all labor and materials furnished in connection therewith." (Emphasis added.)

Thus, the decision to complete the improvements was discretionary with the city. We need not determine whether appellants had any contractual rights under the agreement since the city was under no duty to complete the improvements in the event Paris defaulted. Even under Pepper Pike Codified Ordinance 1109.17, the city had the discretion to complete the improvements. Hence, there are no facts that establish any violation of a contractual duty to complete the improvements.

Regarding the conspiracy claims, appellants maintain that a conspiracy existed between Paris and Pepper Pike since the city engineer, Charles DeMore, also helped Paris prepare the final plat and performance guarantee. Noticeably absent in the record, however, are any facts that demonstrate the city's participation in a conspiracy. In fact, the evidence demonstrates that the city rejected Paris's proposal for a sanitary sewer since it failed to meet the necessary depth requirements. Furthermore, there is no evidence to substantiate the allegation that the city purposely delayed approving the sanitary sewer in order to avoid any obligations under the performance guarantee agreement.

Finally, appellants contend that Pepper Pike is liable *per se* for failing to follow its own ordinances relating to

---

[2] Appended to appellants' brief in opposition to the motion for summary judgment was a copy of an agreement dated October 21, 1981, but that document was not executed by the city and was marked

"void" on its face. That document was not referred to in the complaint and is of no legal effect since it was not executed by the city.

plat approval. As stated before, the city had no duty to complete the sanitary sewer; rather, the completion of the sewer was a discretionary act. No tort action will lie for those acts or omissions involving the exercise of a legislative function involving a high degree of official judgment or discretion. *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 6 OBR 53, 451 N.E. 2d 228, paragraph two of the syllabus; *C & D Partnership* v. *Gahanna* (1984), 15 Ohio St. 3d 359, 362, 15 OBR 480, 482, 474 N.E. 2d 303, 305 (approval of a subdivision plat involves a high degree of official judgment or discretion, hence immunity attaches). Moreover, assuming a duty to construct the sanitary sewer existed, that duty was owed to the public, not to appellants. In *Sawicki* v. *Ottawa Hills* (1988), 37 Ohio St. 3d 222, 525 N.E. 2d 468, the Ohio Supreme Court reaffirmed the public duty doctrine. That doctrine states that if the duty imposed on a public official is a duty owed to the public, then a failure to perform or adequately perform it is a public, not individual, injury and must be redressed, if at all, by some form of public prosecution. *Id.* at 230, 525 N.E. 2d at 477. A city's responsibility to oversee and maintain construction of a sewer system is a duty owed to the general public, similar to police or fire protection. See, generally, Prosser & Keeton, Law of Torts (5 Ed. 1984) 1049-1050, Section 131.

In some circumstances, an exception to the public duty doctrine may exist based upon a "special relationship" between the municipality and the claimant. Paragraph four of the syllabus to *Sawicki* states:

"In order to demonstrate a special duty or relationship, the following elements must be shown to exist: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking."

These elements have not been demonstrated. Pepper Pike never promised to act affirmatively on behalf of appellants. As stated before, the performance guarantee agreement executed by the parties expressly made completion of the sanitary sewer discretionary with Pepper Pike. Hence, there was no assumption of a duty to act. Accordingly, we find no question of material fact exists as to Pepper Pike's liability to appellants in failing to complete construction of the sanitary sewer. The trial court did not err in granting summary judgment. The assigned error is overruled.

*Judgment affirmed.*

MARKUS and NAHRA, JJ., concur.