SMITH et al., Appellants,

v.

STORMWATER MANAGEMENT DIVISION, CITY
OF CINCINNATI, et al., Appellees.

[Cite as *Smith v. Cincinnati Stormwater Mgt. Div.* (1996), 111 Ohio App.3d 502.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950804.

Decided June 26, 1996.

504

*Rendigs, Fry, Kiely & Dennis, Ralph F. Mitchell, D. Michael Poast* and *Jeff S. Routh,* for appellants.

*Geri Hernandez Geiler,* for appellee city of Cincinnati.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *John R. Meckstroth, Jr.,* Assistant Prosecuting Attorney, for appellee Hamilton County.

*Per Curiam.*

In their consolidated appeal the plaintiffs-appellants, Scott and Vicki Smith and Gregory J. Puthoff ("the property owners"), challenge the trial court's order granting summary judgment in favor of the defendants-appellees, the city of Cincinnati and its Stormwater Management Division ("the city"), and Hamilton County ("the county"), in an action for damages caused by stormwater flooding. The property owners contend that summary judgment was inappropriate because a question of fact existed with respect to whether the appellees were negligent in the construction, operation, and maintenance of the sewer in the area of flooding. For the reasons that follow, we hold that the trial court properly granted summary judgment for the city and the county.

## I

The city's Stormwater Management Division is responsible for storm sewers located within city limits. The property owners' residences are located in an area of the flood plain on Byrneside Drive in Colerain Township. A creek runs south to north from the city and through a nine-by-six-foot culvert which allows stormwater runoff to pass under Byrneside Drive and then into the creek along the side of the property owners' residences. The Stormwater Management Division is not responsible for the culvert which is located in the township. In June 1993, during a "fifty year storm" (a rainstorm of a magnitude which occurs on an average of once every fifty years), the property owners' residences were flooded when the creek overflowed.

In its written decision the trial court found that the allegations of the property owners' complaint were divisible into three categories:

(1) negligence in the design and construction of the sewer,[1]

(2) negligence in the maintenance, operation, and upkeep of the sewer, and

(3) negligence in the development, improvement, and expansion of the sewer.

With respect to the first category, the trial court ruled that the design and construction of a sewer were "governmental functions" within the language of R.C. 2744.01(C)(2)($l$) and that, pursuant to R.C. 2744.02(A), the imposition of liability upon a political subdivision in connection with such activity was clearly proscribed under the doctrine of sovereign immunity.

With respect to the second category, the trial court ruled that the maintenance, operation, and upkeep of a sewer were "proprietary functions" within the language of R.C. 2744.01(G)(2)(d) and that, pursuant to R.C. 2744.02(B)(2), the defendants-appellees were liable for the negligent performance of these activities by their employees. The trial court concluded, however, that the only arguable evidence that the city and the county had negligently failed to operate or maintain the sewer was the affidavit of Lester C. Auble, Jr., a registered professional civil engineer, and this affidavit was legally insufficient to create a genuine issue of material fact because it offered nothing more than conclusions and failed to identify any specific acts of negligence or demonstrate how any alleged negligence proximately caused the property owners' damage.

---

1. Because the term "sewer" was used by both the trial court and the parties to refer to the culvert, we will continue to use it here. As noted, however, in the affidavit of Wesley Wimmer, the Supervising Engineer of the Stormwater Management Division, a culvert is not technically a "sewer" but, rather, a "pipe set below street level, having open ends at each side of the street or right-of-way, which allows the stormwater run-off to pass from one side of the street to the other, below street level."

Finally, with respect to the third category, the trial court concluded that the decision to make improvements to an existing sewer involves the exercise of judgment and discretion and is therefore a discretionary governmental function within the meaning of R.C. 2744.03(A)(5). Accordingly, pursuant to that section, the trial court concluded that the appellees were immune from suit because the property owners had neither alleged nor presented evidence that either the city or the county had acted with malicious purpose, in bad faith, or in a manner which was wanton or reckless.

## II

■ In their first assignment of error, the property owners assert that they presented sufficient evidence to create a question of fact for the jury whether the appellees negligently constructed and then failed to operate and maintain the sewer. In making this argument they rely exclusively on the Aubel affidavit, which was rejected as conclusory by the trial court. According to the property owners, the Auble affidavit identifies specific acts of negligence relating to the "maintenance, operation and upkeep of the sewer system" in the following excerpted passages:

"*Area D–3*

" * * * The general configuration of the valley produces a steep slope along the west bank (generally 2:1) and a flat slope to the east (½"/foot). Erosion is evident along the west slopes, particularly at the exit of the 66" culvert as mentioned earlier. Due to the flat slope of the channel (less than 1%) and the restriction created by the entrance flume and culvert under Byrneside Avenue, a flat water surface level exists during flood conditions with the depths varying from 3.5' at the 66" culvert to 12' at the culvert under Byrneside Avenue.

"The City has responsibility for the run-off from the 66" culvert under Kipling Road, a substantial developed area north of Kipling Road and east from Shadymist Drive, and more than half of the stream itself between Kipling Road and Byrneside Avenue.

" * * *

"*Item B—Area 'B' 66" Culvert, etc.*

"The area contributing to this culvert, the culvert itself, and areas downstream require careful consideration. In any attempt to correct or eliminate flooding south of this structure, attention must be given to the effects downstream, north of the structure. Analysis of the downstream channel and the structures therein indicate that all downstream facilities are at or near capacity. Therefore, any modifications of the 66" culvert should not substantially increase downstream

flows. The recommendations for correcting the flooding problem in this area require several modifications of the structure and the upstream channel.

" * * *

"Additionally, the City and/or County failed to properly control development of the area serviced by the 66″ culvert under Kipling Road, the culverts north of Byrneside Avenue and the stream in between. As a result of overdevelopment and failure to properly regulate development, excessive use of these culverts and stream has placed demands upon them in excess of their capacity. These additional demands and increased flow have increased the amount of debris and other material which occasionally blocks the culverts, resulting in additional flooding and need for additional maintenance.

" * * *

"The City and/or County has failed to properly maintain these culverts, thereby causing additional flooding in this area."

Addressing this argument, we note initially that, by stressing factual issues, the property owners in a large measure overlook the essential legal issue, which is the appellees' amenability to suit as political subdivisions. The basis of the Auble affidavit is the "Storm Water Management Study" prepared for the city by Auble–Mitchell–Burgess & Associates ("AMB"). The allegations of negligence set forth by Auble concern the city's and the county's alleged failure to implement its recommendations.[2] Because the decision to implement the recommendations involves the exercise of discretion in matters concerning the use of public resources, however, the city and the county are immune from civil liability under R.C. 2744.03(A)(5). The pertinent part of that section states:

"The political subdivision is immune from liability if the * * * loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel * * * and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in wanton or reckless manner."

We agree with and adopt the reasoning of the Ninth Appellate District in *Duvall v. Akron* (Nov. 6, 1991), Summit App. No. 15110, unreported, 1991 WL 231433, holding that the city's decision not to update a fifty-one-year-old sewer system that failed to meet current demands was an exercise of its "discretionary governmental functions" even in light of a history of flooding. As the court in *Duvall* stated:

---

2. According to the Wimmer affidavit, see fn. 1, *supra*, the city implemented all of the recommendations of the AMB study except two, one of which was in the process of implementation and the other of which was determined not to be effective.

"[The property owners] may be correct in asserting that the system altered fifty-one years ago is inadequate to meet the current residential demands and that pumps or a general update of the system are indicated. Nevertheless, these remedies lie within the discretionary governmental functions of Akron. Akron was immune from liability when it exercised its judgment fifty-one years ago and planned sewer construction calling for the sewer tie-in to be altered. *Akron remains immune from liability when it exercises its judgment in determining whether to acquire equipment, such as pumps, and in determining how to allocate its limited financial resources, with regard to updating the sewer system.*" (Emphasis added.)

We conclude, therefore, that, to the extent that the property owners' allegation of negligence concerns the failure of the city and the county to implement AMB's recommendations, the city and the county were immune from civil liability, as a matter of law, given the lack of any evidence that they acted with a malicious purpose, in bad faith, or in a wanton and reckless manner.

■ Although the property owners included a claim for negligent design and construction, the city and county are also statutorily immune from civil liability under this theory. R.C. 2744.02(A)(1) immunizes a political subdivision from liability for damages in a civil action for injury or property loss allegedly caused in connection with a governmental or proprietary function. R.C. 2744.01(C)(2)(*l*) defines "governmental function" as "[t]he provision or nonprovision, planning or design, construction or reconstruction of a public improvement, including, but not limited to, a sewer system." See, also, *Passov v. Paris Dev. Corp.* (1988), 55 Ohio App.3d 202, 563 N.E.2d 327 (completion of a system is a discretionary act of the legislature to which immunity applies).

■ Having thus excluded, as a matter of law, the property owners' claims based upon the city's alleged failure to implement the AMB recommendations, and for negligent design and construction, we are left with the question whether there is contained in the Auble affidavit sufficient evidence to create a triable issue as to whether the city or county negligently failed to properly maintain the sewer. Such a theory remains legally viable since, as the trial court noted, the appellees are amenable to suit for the negligence of their employees in the daily performance of activities involved in proprietary functions. R.C. 2744.02(B)(2); see, also, *McVey v. Cincinnati* (1995), 109 Ohio App.3d 159, 671 N.E.2d 1288.

A review of the passages excerpted above makes it clear that the Auble affidavit contains allegations of design flaws and suggested modifications to alleviate further flooding. It is difficult to discern anywhere, however, that Auble identified specific acts of negligence in the day-to-day "maintenance" of the sewer so that it could be held that the sewer was in a state of negligent disrepair.

While he does suggest that either the city or the county, or both, was negligent in properly regulating the development of the area serviced by the culvert, he does so in a manner which, like the rest of the affidavit, is entirely conclusory. The city, on the other hand, presented evidence that it had required all upstream development located within its territorial limits to include detention facilities designed to release stormwater runoff into the creek at approximately the same rate as before the development was created.[3] Furthermore, the Auble affidavit fails to provide any evidence that the object of his concerns proximately caused this particular flooding, which, as noted, was the result of a fifty-year storm.

■ We also reject the property owners' second issue, in which they argue that the city and the county were not entitled to summary judgment on the issue of sovereign immunity because the stormwater system was an "aqueduct" within the contemplation of R.C. 2744.02(B)(3). That section provides:

"Political subdivisions are liable for * * * loss to persons or property caused by their failure to keep * * * aqueducts * * * within the political subdivision open, in repair and free from nuisance * * *."

Other than to delineate this issue below, the appellants did not provide any evidence with respect to the culvert being, in fact, an aqueduct. On appeal they rely upon definitions contained in the Oxford and Webster dictionaries, describing an aqueduct as a water channel and "a conduit or artificial channel conducting water."

We hold that, as the nonmoving parties, the property owners failed to satisfy their reciprocal burden under Civ.R. 56. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. Absent evidentiary definitional material in the record classifying the creek and culvert as an "aqueduct," an inference does not arise from a bare-bones allegation by counsel. Furthermore, even if the culvert were assumed to be classifiable as an aqueduct, as we have seen, the property owners failed to present any evidence of the defendants-appellees failing to keep it "open, in repair, and free from nuisance," or that such failure was the cause of this particular flooding.

The judgment of the trial court is, accordingly, affirmed.

*Judgment affirmed.*

HILDEBRANDT, P.J., GORMAN and PAINTER, JJ., concur.

---

**3.** According to Wimmer, the only development that was not required to construct such a detention facility was "Providence Heights," which was built prior to the existence of the Stormwater Management Division, and which did not contribute significantly to the stormwater runoff flowing downstream into Colerain Township.