OPINION
Plaintiffs-appellants, Roger and Barbara Kiep, appeal the decision of the Butler County Court of Common Pleas granting summary judgment to defendants-appellees, city of Hamilton ("Hamilton") and Asplundh Tree Expert Co. ("Asplundh"). We reverse the trial court's decision and remand the case for further proceedings.
Appellants' home is on Fairfield Drive in Hamilton, Ohio, and borders a drainage ditch over which Hamilton holds an easement. The drainage ditch flows into an underground concrete culvert in the rear of appellants' yard. The underground culvert opening has a diameter of four feet. The ditch flows behind the backyards of at least five other homeowners before it enters the underground culvert behind appellants' yard. The ditch is approximately ten to fifteen feet wide and is four to five feet deep. The ditch resembles a creek bed, and water flows through the ditch year round. The height of the water varies from approximately one inch to as high as two feet, depending upon the weather conditions and the seasons. Along the ditch there is heavy foliage and tree growth.
On April 15, 1993, appellants returned to their home to find that their backyard and their finished basement had been flooded. The flood was caused by blockage of the opening to the underground culvert by an accumulation of logs, branches, tree limbs, leaves, and other natural debris after a storm. Prior to the flood, there had been no flooding problems associated with the ditch.
Appellants filed a complaint against Hamilton on December 3, 1993 claiming that Hamilton, its employees or agents negligently, carelessly, and recklessly allowed debris to accumulate in the drainage ditch. Appellants contend that Hamilton failed to properly supervise its employees and agents and failed to properly warn appellants of the dangerous conditions of the ditch. Appellants amended their complaint on February 22, 1995 to include Asplundh.[1]
Hamilton had a contract with Asplundh to trim trees and remove debris caused by the work. The contract between Hamilton and Asplundh includes the following section:
 The Contractor [Asplundh] shall clean up and remove all of the debris and rubbish that may accumulate in connection with the work under this contract. Streets and private property must be kept clear and free from rubbish at all times and must be left in a neat and orderly condition at the end of each day's work. In no case shall brush or wood be allowed to remain on public thoroughfares overnight or on lawns unless arrangements have been made with the owner and the brush piles are properly marked for safety. Immediately upon completion of the work at each location, the Contractor shall remove and dispose of all brush and debris (completely from public property and from private property) in accordance with the desire of property owners or City.
Hamilton filed a cross-claim against Asplundh on March 20, 1995, alleging that if appellants incurred property damage from the flooded ditch, the damages were the direct and proximate result of the conduct of Asplundh. Hamilton claimed to have a right of indemnification from Asplundh if any damages were awarded against Hamilton.
Appellants entered into evidence the plat map of their subdivision. The map, dated November 1958, states that drainage easements are reserved to Hamilton, "having charge of the maintenance of drainage facilities, shall have hereby, the authority to enter said easements for proper maintenance thereof, and to remove all obstructions, natural or otherwise * * *."
Marvin Cook, the streets and sewers superintendent for Hamilton, stated in his affidavit that according to his records the last time the ditch was inspected was in May 1990. Hamilton cleaned the ditch in January 1988, July 1989, and May 1990. The next time Hamilton cleaned the ditch was shortly after the flood.
Diane Manitsas lives two houses upstream of the ditch from appellants' house. Manitsas stated in her deposition that when Hamilton employees cleaned the ditch approximately one month after the flood, they removed three truck loads of debris that included stacks of cut logs and branches. Manitsas observed about two days after the flood a number of neatly arranged cut logs in the ditch behind her house. These logs were placed side by side and were approximately one foot above the creek bed. The logs were six to eight inches wide and about two to three feet long. She also testified that the only people she had seen cutting and trimming trees in that area were Asplundh employees.
On six separate occasions from November 21, 1992 through December 26, 1992, Asplundh trimmed or removed trees from the ditch area. According to Asplundh's time sheets entered as evidence, Asplundh employees spent over seven hundred man hours trimming trees near Fairfield Drive. The time sheets show that Asplundh trimmed as many as five hundred thirty-six trees and removed entirely thirty-nine trees.
Hamilton filed a motion for summary judgment on January 16, 1996, arguing that R.C. 2744.03(A)(5) gives the city a grant of immunity for any negligent actions of its employees that are considered an exercise of judgment and discretion. In support of its motion, Hamilton submitted affidavits by Michael J. Samoviski, director of public works for Hamilton, and Cook. Samoviski stated that periodic inspections are made of the drainage ditches in Hamilton and that all ditches are not inspected annually because of a lack of sufficient manpower. Samoviski states:
 In inspecting the various ditches throughout the City of Hamilton, it is incumbent upon the inspector to exercise his judgment and discretion in determining whether it will be necessary for the City of Hamilton to utilize personnel and equipment to clear, clean or remove brush, soil, or debris from the ditch. The decision to send out crews and equipment to a certain location in order to clear a drainage ditch is made after examination and evaluation of among other consideration, (a) the time that will be needed in order to accomplish the task, (b) the expense anticipated in the project, (c) the resources, i.e. equipment needed for the job(s), (d) the need for personnel to be utilized elsewhere in emergency situations, (e) weather conditions at the time of the inspection, and (f) review of the history of the ditch to determine whether the City has any knowledge of prior flooding.[2]
Asplundh filed its own motion for summary judgment on November 30, 1995. Asplundh argued that summary judgment was proper in appellants' cause of action against Asplundh because appellants offered no credible evidence showing that Asplundh was the proximate cause of the flood. Asplundh also filed affidavits of two of its employees who worked near Fairfield Drive. The workers claimed that all trees and limbs that were cut were removed and not left in the ditch. The workers also state that the ditch was routinely used by adjoining property owners for disposal of their yard waste.
The trial court granted Hamilton's motion for summary judgment, finding that the decision of when to inspect and whether to clean the ditch involved the degree of discretion and judgment contemplated in R.C. 2944.03(A)(5). The court also stated that appellants failed to present any evidence that Hamilton deviated from its standard of care and that there was no evidence that if Hamilton had cleaned the ditch, the flood would not have resulted. The court held that in order for appellants to have a cause of action against Hamilton, appellants needed to demonstrate that Hamilton's actions were either malicious, taken in bad faith, wanton, or reckless.
The court also granted summary judgment in favor of Asplundh, finding that appellants presented no evidence that Asplundh was the proximate cause of the flood. The court held that a "plaintiff resisting a summary judgment motion must offer some concrete evidence from which a reasonable juror could return a verdict in his favor." The court evaluated the evidence presented by appellants and Asplundh and held that "we have positive unrefuted testimony by the defense as opposed to a bare inference presented by the plaintiffs."
Appellants argue that the trial court erred in granting both motions for summary judgment and present two assignments of error. Appellants' first assignment of error is as follows:
 THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF THE DEFENDANT-APPELLEE CITY OF HAMILTON, OHIO.
Appellants argue that the trial court erred in finding that Hamilton enjoyed sovereign immunity as defined in R.C.2744.03(A)(5).[3] Hamilton claims it is immune from liability for the alleged negligent acts of its employees because their employees exercised judgment and discretion in the maintenance of the ditch. Hamilton argues that the decisions concerning when to inspect and/or walk in the various drainage ditches within the city involve a "high degree of the exercise of judgment or discretion."
First, we address the issue of whether R.C. 2744.03(5) provides sovereign immunity to Hamilton based upon the facts of this case. The Ohio Supreme Court abolished municipal immunity in Haverlack v. Portgage Homes, Inc. (1982), 2 Ohio St.3d 26. The legislature subsequently enacted R.C. Chapter 2744 in 1985 which defines actions for which a municipality may be held liable. R.C.2744.02(A)(1) states that:
 A political subdivision is not liable for damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function. (Emphasis added.)
While R.C. 2744.02(A)(1) provides broad immunity to acts in connection with governmental and proprietary function, R.C.2744.02(B) provides that:
 Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or any of its employees in connection with a governmental or proprietary function * * *[.] (Emphasis added.)
R.C. 2744.02(B) provides an exception to the broad immunity granted to political subdivisions in R.C. 2744.02(A)(1). The actual exceptions are listed in R.C. 2744.02(B)(1)-(5). The relevant exception in this case is R.C. 2744.02(B)(2), which reads:
 Except as otherwise provided in section 3746.24
of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions. (Emphasis added.)
A proprietary function of a political subdivision includes the maintenance of a sewer system. R.C. 2744.01(G)(2)(d).
R.C. 2744.02(B)(2) is subject to the provisions of R.C. 2744.03
and 2744.05. The provision that Hamilton argues is applicable to the present case is R.C. 2744.03(A)(5), which reads:
 The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner. (Emphasis added.)
R.C. 2744.03(A)(5) provides immunity for a political subdivision's "exercise of judgment or discretion." R.C. 2744.01(F) provides the definition of a political subdivision as follows:
 "Political subdivision" or "subdivision" means a municipal corporation, township, county, school district or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state. "Political subdivision" includes, but is not limited to, a county hospital commission, regional planning commission, county planning commission, joint planning council, interstate regional planning commission, port authority, regional council, emergency planning district and joint emergency planning district, joint emergency medical services district, fire and ambulance district, joint interstate emergency planning district, county solid waste management district and joint solid waste management district. (References to code sections defining each agency have been omitted.)
R.C. 2744.01(B) provides the definition of an employee as follows:
 "Employee" means an officer, agent, employee, or servant, whether or not compensated or fulltime or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision. "Employee" does not include an independent contractor and does not include any individual engaged by a school district pursuant to section 3319.301 of the Revised Code. * * *
The significance of these definitions becomes evident when considering the immunity granted by R.C. 2744.03. The defenses and immunities for a political subdivision and an employee listed in R.C. 2744.03 define who receives immunity for the actions of whom. For example, R.C. 2744.03(A)(1)-(3) grants a political subdivision immunity for certain actions of employees, R.C.2744.03(A)(4) grants a political subdivision immunity for certain actions by the political subdivision and an employee, R.C.2744.03(A)(6) grants an employee immunity for certain employee's actions, and R.C. 2744.03(A)(7) grants a political subdivision and an employee immunity in certain instances.
The section relevant to this case, R.C. 2744.03(A)(5), grants a political subdivision immunity from the "exercise of judgment or discretion" of the political subdivision. It is apparent that the legislature intended the immunity of R.C. 2744.03(A)(5) to extend only to the acts of a political subdivision and not to the acts of its employees, because unlike the other sections of R.C.2744.03(A), R.C. 2744.03(A)(5) does not include the word "employee."
It is also apparent from the definition of a political subdivision in R.C. 2744.01(F) and from the examples given in that defiition that the legislature intended a political subdivision to be defined as a "body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." R.C. 2744.01(F). Ohio courts have found the following to not be "political subdivisions" as defined by R.C.2744.01(F): a non-profit ambulance service, Poole v. Inlow (1992), 80 Ohio App.3d 379, 382; the Ohio High School Athletic Association, Wissel v. Ohio High School Athletic Assn. (1992),78 Ohio App.3d 529, 536; a county sheriff, Saunders v. McFaul (1990), 71 Ohio App.3d 46, 52; and a volunteer fire department, Cincinnati Ins. Co. v. Rose (C.P. 1992), 63 Ohio Misc.2d 1, 7.
Therefore, R.C. 2744.03(A)(5) immunity extends only to the "exercise of judgment or discretion" of a political subdivision as defined by R.C. 2744.01(F) and not to the actions of employees of the political subdivision. Samoviski, Cook, and Asplundh cannot be considered political subdivisions. If R.C.2744.03(A)(5) immunity was extended in a broad manner to include subdivision employees, the liability provisions of R.C.2744.02(B) would have no force. Hall v. Bd. of Edn., Fort Frye Local School Dist. (June 14, 1996), Washington App. No. 95CA16, unreported. We hold that the trial court erred in finding that Hamilton was immune pursuant to R.C. 2744.03(A)(5) from any negligent action by an employee that could be construed as an exercise of judgment or discretion.
Other districts have similarly held that the immunity protection of R.C. 2744.03(A)(5) is narrow and does not extend to the discretionary actions of a political subdivision's employees. McVey v. City of Cincinnati (1995), 109 Ohio App.3d 159, 163; Hallett v. Stow Bd. of Edn. (1993), 89 Ohio App.3d 309, 313-14; Hall, unreported; Bolding v. Dublin Local School Dist. (July 15, 1995), Franklin App. No. 94APE09-1307, unreported; Marcum v. Adkins (Mar. 28, 1994), Gallia App. No. 93CA17, unreported; Younger v. Buckeye Local School Dist. (July 8, 1992), Medina App. Nos. 2060, 2065, unreported.
Hamilton argues that even if this court finds that it is not entitled to immunity pursuant to R.C. 2744.03(A)(5), appellants did not produce any evidence relating to negligence on the part of Hamilton. Evidence that there was damage to the sewer, that the damage may have been the result of Hamilton's failure to inspect and maintain the sewer, and that excessive flooding occurred is sufficient evidence to maintain a claim of negligence and defeat a motion for summary judgment. Nice v. Marysville (1992), 82 Ohio App.3d 109, 118. Ohio courts have held that if a city accepts the responsibility to maintain a sewer and is then negligent in its inspection and/or maintenance of the sewer, the city may be liable for damages proximately caused by its negligence. Doud v. Cincinnati (1949), 152 Ohio St. 132; Smith v. Cincinnati Stormwater Mgt. Div. (1996), 111 Ohio App.3d 502,508; Nice, at 117.
Appellants presented evidence that the flooding occurred because the underground culvert opening was blocked and evidence that Hamilton had not inspected the ditch since 1990. Appellants also showed that major tree trimming work by Asplundh took place prior to the flood. Appellants also presented evidence that cut logs similar to the ones found blocking the ditch opening were found upstream and stacked close to the stream bed. Construing the evidence in a light most favorable to appellants, a reasonable person could find that because of Hamilton's employees' negligent failure to inspect the ditch, or because of the negligence of the employees in maintaining the ditch, Hamilton proximately caused the flooding that caused damage to appellants. The fact that it has not been conclusively determined who caused the underground culvert opening to be blocked shows that there "is a genuine issue of material fact, as the city could be found negligent based on inferences viewed most favorably to appellants." Nice, at 118. For the above listed reasons, appellants' first assignment of error is sustained.
Appellants' second assignment of error is as follows:
 THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF THE DEFENDANT-APPELLEE ASPLUNDH TREE EXPERT CO.
The trial court granted Asplundh summary judgment on the basis that appellants presented no evidence as to the exact origin of the debris in the ditch and no evidence as to the origin of the logs. The trial court reasoned that it had before it "positive unrefuted testimony" by Asplundh that it was not the proximate cause of the flood. We disagree.
When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court. Jones v. Shelly Co. (1995), 106 Ohio App.3d 440, 445; Gerdes v. Super America (Apr. 21, 1997), Butler App. No. CA96-08-171. When reviewing a grant of summary judgment, a reviewing court must follow the standard set forth in Civ.R. 56(C), which specifically provides that before summary judgment can be granted, it must be determined that 1) no genuine issue as to any material fact remains to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346.
"Summary judgment is not appropriate where the facts, which must be viewed in a light most favorable to the party opposing the motion, are subject to reasonable dispute." Jackson v. Kings Island (1979), 58 Ohio St.2d 357, 360. Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Welco,67 Ohio St.3d at 346. The reason for this is that "summary judgment precludes a jury's consideration of a case, and should, therefore, be used sparingly, only when reasonable minds can come to but one conclusion." Shaw v. Central Oil Asphalt Corp. (1981),5 Ohio App.3d 42, 44.
In the present case, the question of fact that should be decided by the trier of fact is whether Asplundh negligently left debris which was the proximate cause for the blocking of the underground culvert opening. Asplundh contends that the blockage occurred because other neighbors of appellants left yard waste in the ditch. Appellants presented evidence that Asplundh had recently trimmed trees in the area, presented photographs of the blocked opening showing large tree limbs, and also presented testimony of a neighbor who stated that she found cut logs stacked in the ditch.
After having reviewed the record, we find that there is enough of a question of fact in this case to preclude summary judgment. A reasonable person could find that Asplundh left debris that was subsequently washed into the ditch, which thereafter clogged the underground culvert opening, causing damage to appellants.
Considering our discussion of immunity in appellants' first assignment of error, it is also necessary to clarify whether summary judgment should be granted to Asplundh based upon the immunities of R.C. 2744.03. R.C. 2744.03(A)(6) states that
 [an] employee is immune from liability unless one of the following applies:
 (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 (c) Liability is expressly imposed upon the employee by a section of the Revised Code.
* * *
As stated earlier, the definition of an employee includes an agent acting within the scope of the agent's employment for a political subdivision. R.C. 2744.01(B). Asplundh was under contract with Hamilton. Asplundh could be considered an agent of Hamilton, and therefore an "employee" of Hamilton, and enjoy immunity for any negligent actions. However, Asplundh could be considered an independent contractor. If so, Asplundh would not enjoy the immunity of R.C. 2744.03(A)(7) because independent contractors are not considered employees of a subdivision. R.C.2744.01(B). We cannot conclusively find that Asplundh was an agent or an independent contractor because the parties have not fully litigated this issue. For the purpose of reviewing the granting of the motion for summary judgment for Asplundh, we find that this is an issue best resolved by further proceedings below. Appellants' second assignment of error is sustained.
After having reviewed the record, we reverse the trial court's decision granting summary judgment for appellees and against appellants and remand this case for further proceedings.
YOUNG, P.J., and WALSH, J., concur.
[1] Appellants also included Cincinnati Bell, but since Cincinnati Bell is not involved in this appeal, its involvement will not be discussed.
[2] Cook's affidavit mirrors the language of Samoviski's affidavit except Cook states that "I exercised my judgment and discretion * * *" and "[m]y decision to send out crews and equipment * * *."
[3] We do not address the issue of whether Hamilton would be immune under R.C. 2744.03(A)(3) because this issue was not presented to the trial court or raised on appeal.