This is an appeal by plaintiffs, Vicki McBrayer, Dennis McBrayer, Adam McBrayer and Alex McBrayer, from a judgment of the Franklin County Court of Common Pleas granting the motion of defendant, city of Hilliard, to dismiss all of plaintiffs' claims against defendant.
On January 24, 1997, plaintiffs filed a complaint, naming as defendants Laidlaw Environmental Services, Inc., Beaver Adhesives, Inc., OSF America, Inc., Medex, Inc., the city of Hilliard and the Board of Education of the Hilliard City School District. Plaintiffs' complaint alleged in general that plaintiffs Adam and Alex McBrayer were former students of Beacon Elementary School in the Hilliard City School District, and that defendants were responsible for releasing into the environment hazardous substances, pollutants and contaminants, causing harm to these plaintiffs.
As to defendant city of Hilliard (hereafter "city"), the complaint alleged that since 1990 the city has been engaged in a non-governmental, proprietary relationship with defendant Laidlaw Environmental Services, Inc. ("Laidlaw") by virtue of a lease from the city to Laidlaw of the property upon which Laidlaw operates its industrial wastewater treatment facility. It was alleged that, because of its lessor/lessee relationship with Laidlaw, the city knew or should have known of numerous, repeated and various violations of environmental statutes and regulations.
The complaint further alleged that the city has had knowledge since the late 1980's that the sewerage system into which Laidlaw emitted its effluent was defectively designed and frequently backed-up as a result of the sewer lines being inadequate for a joint industrial park and residential area. It was averred that the city was negligent in failing to redesign the sewerage system and to enforce or see that the appropriate authorities enforced the pollution limitations in Laidlaw's discharge permit. In addition to plaintiffs' claim of negligence, plaintiff also asserted causes of action against the city for intentional tort, negligent and or intentional infliction of serious emotional distress and fear of future disease or enhanced risk of future disease.
The city filed an answer on February 28, 1997. On December 8, 1997, the city filed, pursuant to Civ.R. 12(C), a motion to dismiss plaintiffs' complaint. On January 16, 1998, plaintiffs filed a memorandum contra the city's motion to dismiss.
By decision filed December 14, 1998, the trial court sustained the city's motion to dismiss. The decision of the trial court was journalized by judgment entry filed on January 6, 1999. The trial court made a finding of no just reason for delay. On January 27, 1999, plaintiffs filed a notice of appeal from the trial court's judgment entry sustaining the city's motion to dismiss.
On appeal, plaintiffs set forth the following two assignments of error for review:
 1. The Trial Court Committed Prejudicial Error by Finding, Solely On The Basis Of The Pleadings In This Matter, That Defendant City Of Hilliard Is Entitled To Immunity Under Any Provision Of Ohio Revised Code Chapter 2744, Specifically Either § 2744.03(A)(3) Or § 2744.03(A)(5), For Its Failure To Redesign And/Or Properly Operate, Maintain Or Upkeep Its Sewer System.
 2. The Trial Court Committed Prejudicial Error By Concluding The Exception To The General Grant Of Immunity To Ohio Political Subdivisions, Set Forth In Ohio Revised Code § 2744.02(B)(4), Applies Only To Maintenance Of Government Property And Does Not Apply To Defendant's Failure To Enforce Environmental Regulations On Government Property And/Or Failure to Warn Plaintiffs Of The Environmental Regulation Noncompliance And The Dangers Arising Therefrom.
Under the first assignment of error, plaintiffs make two primary arguments. First, plaintiffs argue that the trial court incorrectly decided this case under the immunity provisions of R.C. 2744.03(A)(3). Second, plaintiffs assert that the decisions of the city at issue are not the type that fall within the defenses to immunity set forth in either R.C. 2744.03(A)(3) or 2744.03(A)(5).
In Kareth v. Toyota Motor Sales (Sept. 28, 1998), Clermont App. No. CA98-01-011, unreported, the court held in part:
 A motion for judgment on the pleadings pursuant to Civ.R. 12(C) only raises questions of law that must be determined by consideration of the pleadings. State ex rel. Midwest Pride IV, Inc. v. Pontious (1996), 75 Ohio St.3d 565, 569-570, 664 N.E.2d 931. "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." Id. at 570, citing Lin v. Gatehouse Constr. Co.
(1992), 84 Ohio App.3d 96, 99, 616 N.E.2d 519. Thus, a motion for judgment on the pleadings should only be granted if a court reviews the pleadings and finds that no material issues of fact exist and that the moving party is entitled to judgment as a matter of law. Id., citing Burnside v. Leimbach (1991), 71 Ohio App.3d 399, 403, 594 N.E.2d 60.
In general, pursuant to R.C. 2744.02(A)(1), a political subdivision is "not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(B) sets forth certain exceptions to the general rule of immunity, and states in pertinent part:
 (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
* * *
 (2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
* * *
 (4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01
of the Revised Code.
Pursuant to R.C. 2744.01(C)(2)(l), a "governmental function" includes "[t]he provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system." Under R.C.2744.01(G)(2)(d), a "proprietary function" includes "[t]he maintenance, destruction, operation, and upkeep of a sewer system."
Finally, R.C. 2744.03 sets forth certain defenses or immunities which may be asserted by a political subdivision regarding acts or omissions not protected under the general rule of immunity. R.C. 2744.03 states in relevant part:
 (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
* * *
 (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
* * *
 (5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
The pertinent portions of plaintiffs' complaint against the city included the following allegations:
 111. Hilliard has had knowledge since the late 1980s that the sewerage system into which Laidlaw emitted its effluent was inadequate to serve the needs of the school, local residences, and industries in the vicinity of Beacon Elementary School. Hilliard knew or should have known that the sewerage system in question was defectively designed and frequently backed-up as a result of the sewer lines being inadequate for a joint industrial park and residential area.
 112. Hilliard's failure to redesign the sewerage system and its failure to enforce or see that the appropriate authorities enforced the pollution limitations set forth in Laidlaw's discharge permit, the Columbus City Code and Hilliard ordinances was negligent, which negligence proximately resulted in the injuries to Plaintiffs * * *.
 113. Hilliard was also negligent in allowing Laidlaw to discharge organic waste streams into the Hilliard sewer system, in violation of Laidlaw's discharge permit * * *.
 114. * * * Hilliard's failure to warn Plaintiffs of the ongoing violations of law and environmental standards being committed by Laidlaw was negligent, which negligence proximately resulted in injuries to Plaintiffs and damages to Plaintiffs as more fully described above. * * *
 115. Hilliard's failure to warn Plaintiffs of the ongoing emissions of pollutants, contaminants, chemicals, and other hazardous substances was negligent * * *.
 119. Hilliard's actions, omissions to act, failures to warn, and other failures * * * were wanton, reckless, intentional, and/or displayed a flagrant disregard for Plaintiffs' safety and well-being.
In the present case, the trial court initially concluded that plaintiffs' allegation that the city was negligent in failing to "redesign" the sewer system "states a cause of action for negligent performance of a proprietary function and potentially subjects Defendant to liability under R.C. 2744.02(B)(2)." The trial court went on to conclude, however, that pursuant to R.C.2744.03(A)(3) the city "is immune for any damages that may have resulted from the City's exercise of discretion or judgment in its decision whether or not to redesign the City's sewer system."
We first consider the trial court's determination that plaintiffs' allegation that the city was negligent in failing to "redesign" the sewer system stated a cause of action for negligent performance of a proprietary function. As noted above, in paragraph 111 of plaintiffs' complaint, it was alleged that the city "knew or should have known that the sewerage system in question was defectively designed and frequently backed-up as a result of the sewer lines being inadequate."
It has been held that allegations of negligent design and construction of a stormwater runoff system implicate a "governmental function" for which a city is statutorily immune from liability to property owner's for damages. Smith v.Cincinnati Stormwater Mgt. Div. (1996), 111 Ohio App.3d 502. Thus, a county's design of a sewer system to include a bar screen and bypass to provide access for overflows, which resulted in sewage being discharged onto property owners land, constituted a decision exercised as part of the county's governmental function.Alden v. Summit Cty. (1996), 112 Ohio App.3d 460, 464.
In Sparks v. Erie Cty. Bd. of Cty. Commissioners (Jan. 16, 1998), Erie App. No. E-97-007, unreported, the court recognized that planning or design decisions for which a political subdivision is immune from liability as involving a "governmental function" under R.C. 2744.02(A)(1) "include the original capacity of the system to handle sewage along with increased storm runoff." Similarly, in Zimmerman v. Summit Cty. (Jan. 15, 1997), Summit App. No. C.A. 17610, unreported, the court held that where plaintiffs' claimed injuries resulted from defendant's original design and construction of the sewer system, which would require extensive redesigning and reconstructing of the system to meet current demands, defendant was entitled to judgment as a matter of law under Ohio's Political Subdivision Tort Liability Act.
In the present case, the allegations in plaintiffs' complaint do not identify "specific acts of negligence in the day-to-day `maintenance' of the sewer" that might indicate the sewer was in a state of disrepair. Smith, supra, at 508. Rather, as noted above, plaintiffs alleged in their complaint that the city should have known that the sewer system was defectively designed to handle demands brought on by a joint industrial park and residential area. We conclude that the decision-making process in planning and designing the system at issue involved a governmental function for which the city was immune under R.C.2744.02(A)(1). Thus, we disagree with the trial court's determination that allegations in plaintiffs' complaint came within the purview of R.C. 2744.02(B)(2).
Even assuming, however, that we were to find that the allegations at issue implicated a proprietary function, we would agree with the city that plaintiffs' complaint fails to invoke any of the potential exceptions set forth under R.C. 2744.02(B). As noted by the city, plaintiffs' complaint fails to allege that city employees engaged in any acts of negligence. Rather, the claims at issue, by plaintiffs' own admission in their appellate brief, are "claims that Hilliard acted negligently," and plaintiffs assert that "[t]here is no allegation in the Complaint asserting any act, let alone any negligent act, by any employee of Hilliard." Accordingly, the exception to immunity in R.C.2744.02(B)(2), which requires the negligent performance of some act by an "employee" of the political subdivision with respect to a proprietary function is inapplicable. Based upon the foregoing, we agree with the trial court's determination that the city was immune for any damages as a result of the city's failure to redesign the city's sewer system, albeit for the different reasons stated above.
Plaintiffs' first assignment of error is without merit and is overruled.
Under the second assignment of error, plaintiffs contend that the trial court erred in finding that the city was not liable under the provisions of R.C. 2744.02(B)(4). Plaintiffs argued before the trial court that, because environmental standards enforcement occurs at Laidlaw's facility, such facility is a building "used in connection with the performance of a governmental function," pursuant to R.C. 2744.02(B)(4). The trial court rejected plaintiffs' contention, finding that R.C.2744.02(B)(4) only applies to the maintenance of governmental property and not to the decision-making that may take place on the property. See, e.g., Opial v. Rossford (1996), 116 Ohio App.3d 588,593; Doe v. Jefferson Area Local School Dist. (1994), 97 Ohio App.3d 11,13.
Plaintiffs assert under this assignment of error that at issue here are "governmental functions" of enforcing environmental regulations and that the exception to immunity under R.C.2744.02(B)(4) is applicable. We have previously noted, in addressing plaintiffs' first assignment of error, that plaintiffs' complaint does not allege that any act of negligence by an employee of the city caused injury to plaintiffs. Accordingly, we find inapplicable this exception under R.C. 2744.02(B)(4), which provides for liability of a political subdivision for loss to person or property "caused by the negligence of their employees."
Further, even assuming that plaintiffs' claims had alleged conduct by city employees, we would find no merit to plaintiffs' contention that "the building of each waste producer is a building `used in connection with' the governmental function of enforcing environmental regulations." A number of Ohio courts have held, in construing R.C. 2744.02(B)(4), that "the exception for negligence in buildings used for governmental functions is limited by its own terms to governmental buildings similar to office buildings and courthouses." Hodge v. Cleveland (Oct. 22, 1998), Cuyahoga App. No. 72283, unreported. See, also, Neelon v.Conte (Nov. 13, 1997), Cuyahoga App. No. 72646, unreported;McCloud v. Nimmer (1991), 72 Ohio App.3d 533, 539. In the instant case, plaintiffs' complaint alleges that the facility at issue is owned and operated by Laidlaw.[1] We agree with the city that a privately run facility, not open to the public, is not similar to an office building or courthouse, and the mere fact that environmental enforcement occurs at the site does not transform a private facility into a building used in connection with the performance of a governmental function. As noted by the city, if we were to adopt plaintiffs' position, the city could be liable to any individual harmed by a private business located in the city that was in violation of a building code, safety code, or OSHA regulation.
Finally, as noted above, the trial court held that R.C.2744.02(B)(4) only applies to the maintenance of governmental property and not to the decision-making that may take place on the property. This court has previously applied the same rationale in construing the statute at issue. Steward v. Columbus (Sept. 10, 1998), Franklin App. No. 97APG12-1567, unreported (1998 Opinions 4071, 4078) (finding exception under R.C. 2744.02(B)(4) inapplicable and noting that "Ohio courts have routinely held that R.C. 2744.02(B)(4) `applies to the maintenance of government property, not decisions regarding such property'"), citing Jollyv. Cleveland (Mar. 12, 1998), Cuyahoga App. No. 72973, unreported. Thus, we find no error in the trial court's determination on this issue, and we conclude, based on the allegations of plaintiffs' complaint, that the city was entitled to judgment as a matter of law.
Based upon the foregoing, plaintiffs' second assignment of error is without merit and is overruled.
Accordingly, plaintiffs' first and second assignments of error are overruled and the judgment of the trial court is hereby affirmed.
Judgment affirmed.
PETREE, J., concurs.
TYACK, J., dissents.
[1] As noted under the facts, plaintiffs' complaint alleges that, although the facility is owned and operated by Laidlaw, the city leases the property to Laidlaw. We note that, under Ohio law, "the commercial lessor's liability is governed by traditional common law principles," and thus "one having neither possession nor control of premises is ordinarily not liable for damages resulting from the condition of the premises." Hendrix v. Eighth Walnut Corp. (1982), 1 Ohio St.3d 205, 207.