DECISION AND JUDGMENT ENTRY
{¶ 1} The City of Chillicothe appeals the trial court's summary judgment decision determining that it is not entitled to sovereign immunity under R.C. Chapter 2744 for the damage a sewage backup caused to the property of Henry E. Malone, Jean A. Malone, Paul Saunders, Cheryl J. Saunders, Charles A. Morris, II, Olivia M. Stanley, and Robert L. Patterson.[1] The city asserts that R.C. 2744.03(A)(5) affords it immunity because the decision of whether to fix the deteriorating concrete in the sewer required it to exercise a high degree of discretion in determining how to allocate financial resources and personnel. Because the proper maintenance of a sewer is not a discretionary act, R.C. 2744.03(A)(5) does not provide the city with an immunity defense.
 {¶ 2} In 1995, the city first became aware that concrete in its Douglas Avenue sewer main was deteriorating. In 2000 or 2001, the city submitted a Capital Improvement Plan that called for repairing the sewer line beginning in 2004 or 2005.
 {¶ 3} Before the city could repair the sewer, on May 11, 2003, sewage backed up through the pipes and into a group of Teatsworth Drive property owners' basements and homes. Thus, on September 1, 2004, the Teatsworth Drive property owners filed a complaint against the city. They alleged that the city's negligent failure to maintain and keep the sewer system in repair caused the sewage backup.
 {¶ 4} On March 15, 2005, the city filed a summary judgment motion, arguing that it was entitled to sovereign immunity under R.C. 2744.03(A)(5). The city contended that its decision regarding the maintenance of its sewer system, including whether a particular line needed to be replaced or repaired, involved the exercise of discretion. The property owners countered that the city is not immune under R.C. 2744.03(A)(5) because maintaining a sewer system is a ministerial or proprietary function, not a discretionary one.
 {¶ 5} On August 29, 2005, the trial court denied the city's summary judgment motion. The court found "that routine maintenance of an existing sewer is a duty and not a basic policy decision regarding the use of resources characterized by the exercise of a high degree of judgment or discretion, such as the design, implementation or construction of a sewer system. The cases cited by [the city] did not involve a known deteriorating sewer system or a sewer system in disrepair as is alleged here."
 {¶ 6} The city timely appealed the court's judgment and assigns the following error:
 {¶ 7} I. "THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT TO THE DEFENDANTA-PPELLANT BASED UPON THE IMMUNITY PROVIDED TO IT UNDER R.C. 2744.03(A)(5)."
 {¶ 8} In its sole assignment of error, the city argues that the trial court improperly denied its summary judgment motion. The city contends that it is entitled to statutory immunity. It asserts that R.C. 2744.03(A)(5) absolves it of liability because the decision regarding the repair of the sewer system involved the exercise of judgment or discretion in determining how to use personnel and resources.
 {¶ 9} Initially, we note that when reviewing a trial court's decision regarding a summary judgment motion, an appellate court conducts a de novo review. See, e.g., Doe v. Shaffer (2000),90 Ohio St.3d 388, 390, 738 N.E.2d 1243; Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153;Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-12,599 N.E.2d 786. In determining whether a trial court properly granted a summary judgment motion, an appellate court must review the standard for granting a summary judgment motion as set forth in Civ.R. 56, as well as the applicable law.
 {¶ 10} A trial court may grant a summary judgment motion if the moving party demonstrates that (1) no genuine issues of material fact exist, (2) it is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion and that conclusion is adverse to the opposing party. See Civ.R. 56(C); Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367,369-370, 696 N.E.2d 201; Mootispaw v. Eckstein (1996),76 Ohio St.3d 383, 385, 667 N.E.2d 1197; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. Moreover, when ruling on a motion for summary judgment, the court must construe the record and all inferences in the opposing party's favor. See Doe v. First United Methodist Church (1994),68 Ohio St.3d 531, 535, 629 N.E.2d 402.
 {¶ 11} R.C. Chapter 2744 establishes a three-step analysis for determining whether a political subdivision is immune from liability. See Cater v. Cleveland (1998), 83 Ohio St.3d 24, 28,697 N.E.2d 610. First, R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. See Colbert v. Cleveland, 99 Ohio St.3d 215,2003-Ohio-3319, 790 N.E.2d 781, at ¶ 7; Harp v. Cleveland Hts.
(2000), 87 Ohio St.3d 506, 509, 721 N.E.2d 1020 Second, R.C.2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). See Ryll v.Columbus Fireworks Display Co., 95 Ohio St.3d 467, 470, 2002-Ohio-2584, 769 N.E.2d 372, at ¶ 25. Finally, R.C. 2744.03(A) sets forth several defenses that a political subdivision may assert if R.C. 2744.02(B) imposes liability. See Colbert at ¶ 9. Whether a political subdivision is entitled to statutory immunity under Chapter 2744 presents a question of law. See, e.g., Conley v. Shearer (1992), 64 Ohio St.3d 284, 292,595 N.E.2d 862, 869; Murray v. Chillicothe, Ross App. No. 05CA2819,2005-Ohio-5864, at ¶ 11.
 {¶ 12} In the case at bar, the city concedes that R.C.2744.02(B)(2) applies and excludes it from the general grant of immunity.[2] The city asserts that the issue we must resolve is whether its decision regarding the maintenance of the sewer involved the exercise of judgment or discretion regarding the allocation of personnel and resources, and thus, whether R.C.2744.03(A)(5) provides it with an immunity defense.
 {¶ 13} R.C. 2744.03(A)(5) provides:
The political subdivision is immune from liability if the injury, death or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 14} The R.C. 2744.03(A)(5) defense only extends to activities which involve weighing alternatives or making decisions involving a high degree of official judgment or discretion. See Enghauser Mfg. Co. v. Eriksson Engineering Ltd.
(1983), 6 Ohio St.3d 31, 451 N.E.2d 228, paragraph two of the syllabus. Political subdivisions are immune from liability for "`certain acts which go to the essence of governing,' i.e., conduct characterized by a high degree of discretion and judgment in making public policy choices." Butler v. Jordan (2001),92 Ohio St.3d 354, 375, 750 N.E.2d 554, quoting Enghauser Mfg.Co., 6 Ohio St.3d at 35. In other words, "`immunity attaches only to the broad type of discretion involving public policy made with the creative exercise of political judgment.'" McVey v.Cincinnati (1995), 109 Ohio App.3d 159, 163, 671 N.E.2d 1288, quoting Bolding v. Dublin Local Sch. Dist. (June 15, 1995), Franklin App. No. 94APE09-1307; see, also, Perkins v. NorwoodCity Schools (1999), 85 Ohio St.3d 191, 707 N.E.2d 868 (Cook, J., concurring).
 {¶ 15} "To qualify for immunity, the subdivision's function must require it to weigh multiple considerations, `not merely to "rubber stamp" [a proposal] found to be in compliance with all requisite technical requirements.'" Drew v. Laferty (June 1, 1999), Vinton App. No. 98CA522, quoting Winwood v. Dayton
(1988), 37 Ohio St.3d 282, 284, 525 N.E.2d 808. As we explained in Hall v. Ft. Frye Loc. School Dist. Bd. of Edn. (1996),111 Ohio App.3d 690, 699, 676 N.E.2d 1241: "Immunity operates to protect political subdivisions from liability based upon discretionary judgments concerning the allocation of scarce resources; it is not intended to protect conduct which requires very little discretion or independent judgment. The law of immunity is designed to foster freedom and discretion in the development of public policy while still ensuring that implementation of political subdivision responsibilities is conducted in a reasonable manner."
 {¶ 16} Courts have construed the R.C. 2744.03(A)(5) discretionary defense narrowly. See, e.g., Hallett v. Stow Bd.of Edn. (1993), 89 Ohio App.3d 309, 624 N.E.2d 272. "[T]he exceptions to liability found in R.C. 2744.03 must be read more narrowly than the exceptions to nonliability found in R.C.2744.02(B) in order for the structure chosen by the legislature to make sense." Id. at 313.
 {¶ 17} This court has held that the discretionary defense does not insulate a political subdivision from liability for damages stemming from the negligent maintenance of its buildings or grounds. Frederick v. Vinton County Bd. of Educ., Vinton App. No. 03-579, 2004-Ohio-550; Hall,111 Ohio App.3d at 699-700. The maintenance of property does not involve the exercise of judgment or discretion. Hall,111 Ohio App.3d at 699-700. "The decision to allocate resources, i.e., `how to use equipment * * * or facilities,' has been made." Id. at 700. The political subdivision then must properly maintain the equipment or facilities. Id.
 {¶ 18} In Hall, we approved of then Judge Cook's dissenting opinion in Vallish v. Copley Bd. Of Edn. (Feb. 3, 1993), Summit App. No. 15664: "`[T]he `A(5)' exception contemplates affording immunity for decisions such as how many firetrucks respond to an alarm, how many officers with how much training are assigned to a neighborhood, challenges to snowplowing equipment and personnel on the job during a snowstorm, etc. Whether, when and how to comply with the duty to keep premises in repair is not the sort of judgment contemplated by the `A(5)' exception. Political subdivisions must defend this sort of claim on a negligence basis, not immunity.'"
 {¶ 19} In Hall, we thus concluded that "as a matter of law * * * the maintenance of a political subdivision's property, as opposed to decisions concerning the acquisition and utilization of such property, do not involve a sufficient amount of budgeting, management, or planning to bring such decisions into the purview of R.C. 2744.03(A)(3) or (5)." Id. at 702.
 {¶ 20} In the case at bar, the city's decision regarding the sewer repair does not involve the creative exercise of political judgment that goes to the heart of government. Its decision regarding whether, when, and how to comply with its duty to maintain the sewer does not fall within the R.C. 2744.03(A)(5) exception. See Id. at 701.
 {¶ 21} Additionally, Ohio courts have long recognized that a city can be liable for the negligent maintenance of its sewers. See Portsmouth v. Mitchell Mfg. Co. (1925), 113 Ohio St. 250,255, 148 N.E. 846; Kiep v. Hamilton (May 19, 1997), Butler App. No. CA96-08-158 ("[I]f a city accepts the responsibility to maintain a sewer and is then negligent in its inspection and/or maintenance of the sewer, the city may be liable for damages proximately caused by its negligence."). In Mitchell Mfg. Co.,
the supreme court held:
"The weight of authority holds that the construction and institution of a sewer system is a governmental matter, and that there is no liability for mere failure to construct sewers. However, the weight of authority is equally decisive in holding that the operation and upkeep of sewers is not a governmental function, but is a ministerial or proprietary function of the city.
The obligation to repair is purely ministerial. When, therefore, a municipal corporation assumes the control and management of the sewer or drain which has been constructed in a public street under its supervision, it is bound to use reasonable diligence and care to keep such sewer or drain in good repair, and is liable in damages to any property owner injured by its negligence in this respect."
(Citations omitted).
 {¶ 22} The supreme court announced a similar rule in Doud v.Cincinnati (1949), 152 Ohio St. 132, 137, 87 N.E.2d 243:
"A municipality is not obliged to construct or maintain sewers, but when it does construct or maintain them it becomes its duty to keep them in repair and free from conditions which will cause damage to private property * * *. The municipality becomes liable for damages caused by its negligence in this regard in the same manner and to the same extent as a private person under the same circumstances."
 {¶ 23} The city should not be allowed to defeat application of such a well-established rule by claiming that its decision to keep a sewer in good repair involves the exercise of discretion. To allow a government to assert the discretionary defense in this situation eviscerates the rule. When a governmental sewer system is in need of repair, the government may not attempt to hide behind the R.C. 2744.03(A)(5) immunity defense. See Hacker v.Cincinnati (1998), 130 Ohio App.3d 764, 770, 721 N.E.2d 416
("[A] political subdivision can not simply assert that all of its decisions are discretionary in order to obtain protection under R.C. 2744.03(A)(3) and (A)(5). If a plaintiff's injuries stem from a political subdivision's negligent maintenance or operation of a structure under its control, then the political subdivision will not be immune from liability.").
 {¶ 24} The city's reliance upon Smith v. Stormwater Mgt.Div. (1996), 111 Ohio App.3d 502, 676 N.E.2d 609 is misplaced. In Smith, after the plaintiffs' property suffered stormwater flooding damage, they filed a complaint against the city, asserting that the city was negligent in the construction, operation, and maintenance of the sewer. The plaintiffs claimed that the city was negligent by failing to update its sewer system according to the recommendations of an engineering firm that the city hired to prepare a report. The appellate court determined that the city was entitled to assert the R.C. 2744.03(A)(5) discretionary defense because "the decision to implement the recommendations involves the exercise of discretion in matters concerning the use of public resources." Id. at 507. The court explained: "[T]he city's decision not to update a fifty-one-year-old sewer system that failed to meet current demands was an exercise of its `discretionary governmental functions' even in light of a history of flooding." Id. The court approved of the Ninth District's decision in Duvall v. Akron
(Nov. 6, 1991), Summit App. No. 15110: "`[The property owners] may be correct in asserting that the system altered fifty-one years ago is inadequate to meet the current residential demands and that pumps or a general update of the system are indicated. Nevertheless, these remedies lie within the discretionary governmental functions of Akron. Akron was immune from liability when it exercised its judgment fifty-one years ago and planned sewer construction calling for the sewer tie-in to be altered. Akron remains immune from liability when it exercises its judgment in determining whether to acquire equipment, such as pumps, and in determining how to allocate its limited financial resources, with regard to updating the sewer system.'"
 {¶ 25} The appellate court thus concluded that the city was immune to the extent the property owners alleged that the city was negligent for failing to follow the recommendations. The court recognized that the city could be liable for negligently failing to maintain the sewer but did not find any evidence in the record to support this claim.
 {¶ 26} In the case at bar, by contrast, the record contains evidence that the city negligently failed to maintain the sewer. The situation here does not involve a mere failure to update an aging system. Instead, the city admittedly knew that the concrete was deteriorating and needed repair. Thus, Smith does not support the city's argument.
 {¶ 27} We therefore conclude that the city's decision regarding the sewer repair is not a discretionary decision entitled to the R.C. 2744.03(A)(5) defense. The city has a duty to properly maintain its sewers and cannot shirk its duty by claiming that the decision to properly maintain the sewers involved discretion in allocating limited financial resources and personnel.
 {¶ 28} Accordingly, we overrule the city's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
[1] While a decision denying a party's summary judgment motion ordinarily is not a final, appealable order, R.C. 2744.02(C) provides that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."
[2] R.C. 2744.02(B)(2) states:
Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
* * * *
(2) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
R.C. 2744.01(G)(2)(d) states that a proprietary function includes: "The maintenance, destruction, operation, and upkeep of a sewer system." The city apparently agrees that it failed to either maintain or upkeep the sewer system.