[Cite as *Williams v. Glouster*, 2012-Ohio-1283.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| ESTHER WILLIAMS, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 10CA58 |
| | : | |
| vs. | : | **Released: March 20, 2012** |
| | : | |
| VILLAGE OF GLOUSTER, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Randall L. Lambert, Lambert Law Office, Ironton, Ohio, for Appellant.

D. Joe Griffith, Dagger, Johnston, Miller, Ogilvie & Hampson, Lancaster, Ohio, for Appellee.

_____

McFarland, J.:

{¶1} Appellant, Village of Glouster, appeals the trial court's summary judgment decision determining that it is not entitled to sovereign immunity under R.C. Chapter 2744 for the personal injury and property damage caused to Appellee, Esther Williams. On appeal, Appellant contends that 1) the evidence fails to establish the Village acted negligently in its repair, maintenance, and/or operation of the storm drainage system, and as a result, the Village is immune from liability pursuant to R.C. 2744.02; and 2) since

the Village is immune from liability pursuant to R.C. 2744.02, this Court

need not determine whether the Village's acts were reckless.

{¶2} In light of our determination that Appellee's complaints related

to the storm drainage system are properly categorized as negligent

maintenance, which is a proprietary function, rather than negligent design or

construction, which is a governmental function, and that Appellant properly

alleged facts which, if proven, would establish negligence, Appellant's first

assignment of error is overruled.  Additionally, we sustain Appellant's

second assignment of error to the extent that it argues that we do not reach

the issue of recklessness; however, in light of our disposition of Appellant's

first assignment of error, we affirm the trial court's denial of Appellant's

motion for summary judgment.

FACTS

{¶3} On or about March 28, 2007, after several days of rain, while

attempting to walk from the porch of her house to her vehicle which was

parked in her driveway, Appellee stepped into a wet, sandy area and

sustained a fall, resulting in a broken ankle.  Subsequently, on March 11,

2009, Appellee filed a complaint for personal injury, property damage and

trespass against Appellant, Village of Glouster.  In her complaint, Appellee

alleged that Appellant's negligent failure to maintain the "sanitary

sewer/storm sewer line" caused it to malfunction and become clogged, causing flooding onto Appellee's property, resulting in severe physical injury to Appellee.[1]  Appellant responded by claiming that it was immune from liability under Chapter 2744 of the Ohio Revised Code.

{¶4} On August 31, 2010, Appellant filed a motion for summary judgment, contending it was immune from liability under R.C. 2744.02. Specifically, Appellant contended that Appellee conceded in her deposition that the sanitary sewer lines did not cause flooding onto her property and thus, Appellant was not negligent in its maintenance of the sanitary sewer lines.  Appellant went on to argue that "[t]he repair, maintenance and/or operation of the storm drainage system is a governmental, not a proprietary, function, and as a result, the Defendant is immune from liability pursuant to R.C. 2744.02."  In support of its argument, Appellant cited to cases holding municipalities immune from liability for improperly designed, rather than improperly maintained, storm drainage systems, as well as an affidavit by Robert Funk, Mayor of the Village of Glouster.

{¶5} Mayor Funk, in his affidavit, essentially stated that the ultimate solution to the Village of Glouster's storm drainage problem would have

---

[1] Although Appellee's complaint also alleged overflow or backup of the sanitary sewer onto her property, Appellee later clarified in her deposition that there were no problems with the sanitary sewer lines and that the issue was related to clogging of the storm sewer, specifically a storm drain or catch basin, located across from her property.

been to replace the entire system, but that the Village had never had the funds available to do so. The affidavit further averred that Appellant had attempted to clean and open the storm drainage system at issue several days prior to the date of Appellee's injury, that despite the efforts the drain could not be completely opened, and that even if the storm drainage system had been totally operational, it would not have been able to handle the amount of rainfall that occurred. Thus, claiming that the root of the flooding problem was the design and construction of the original storm drainage system, Appellant argued it was entitled to summary judgment as a matter of law on its claim of immunity.

{¶6} On September 29, 2010, Appellee filed her memorandum contra motion for summary judgment. In her memorandum contra, Appellee argued that the operation of sewers, whether sanitary or storm, is a proprietary rather than governmental function. Appellee argued that Appellant's assertions that the problems with the storm sewer lines were due to poor design or bad construction were simply false, and instead alleged that Appellant changed its maintenance routine and became inattentive to its maintenance obligations. Appellee additionally argued that the size and construction of the storm sewer line were not at issue, but rather if Appellant

had conducted regular maintenance of the line, the line could have handled the same flow it had always handled prior to 2005.

{¶7} Appellee's memorandum contra was supported by her own affidavit, which averred that 1) she had lived at her residence since 1997; 2) Appellant properly maintained a storm sewer line located in front of her property until 2004 and there was never any flooding; 3) beginning in 2005, Appellant began allowing the lines to become clogged, which caused flooding to her property during heavy rains; 4) she made repeated complaints to Appellant regarding the lack of maintenance and plugged line; 5) she personally inspected the "storm drain sewer" on several occasions after making complaints and could visibly see the line was plugged with debris that did not allow it to receive storm waters; 6) on March 27, 2007, after making over ten complaints to Appellant, the line remained plugged and a heavy rain event caused the storm sewer to overflow, creating a slippery condition on her property, which caused her to fall and break her ankle while attempting to walk from her porch to her driveway.

{¶8} On December 1, 2010, the trial court issued a decision and entry denying Appellant's motion for summary judgment.  In reaching its decision, the trial court relied upon R.C. 2744.01(G)(2)(d), which provides that "[t]he maintenance, destruction, operation, and upkeep of a sewer

system" is a proprietary function. The trial court further found that the exception to immunity contained in R.C. 2744.02(B)(2) applied, which provides as follows: "* * * political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

{¶9} It is from this decision and entry that Appellant brings its timely appeal, assigning the following errors for our review.

ASSIGNMENTS OF ERROR

"I.   THE EVIDENCE FAILS TO ESTABLISH THE VILLAGE ACTED NEGLIGENTLY IN ITS REPAIR, MAINTENANCE, AND/OR OPERATION OF THE STORM DRAINAGE SYSTEM, AND AS A RESULT, IS IMMUNE FROM LIABILITY PURSUANT TO OHIO REVISED CODE 2744.02.

II.   SINCE THE VILLAGE IS IMMUNE FROM LIABILITY PURSUANT TO R.C. 2744.02, THIS COURT NEED NOT DETERMINE WHETHER THE VILLAGE'S ACTS WERE RECKLESS."

ASSIGNMENT OF ERROR I

{¶10} In its first assignment of error, Appellant, Village of Glouster, essentially challenges the trial court's denial of its motion for summary judgment, which was based upon the trial court's determination that Appellant was not immune from liability under R.C. 2744.02. Appellee responds by contending that the trial court properly ruled that genuine issues

of material fact were in dispute and as such properly denied Appellant's motion for summary judgment.[2]

## SUMMARY JUDGMENT STANDARD

{¶11} Appellate courts review trial court summary judgment decisions de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. Accordingly, appellate courts must independently review the record to determine if summary judgment is appropriate. In other words, appellate courts need not defer to trial court summary judgment decisions. See *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411-412, 599 N.E.2d 786. Thus, to determine whether a trial court properly awarded summary judgment, an appellate court must review the Civ.R. 56 summary judgment standard as well as the applicable law. Civ.R. 56(C) provides:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any

---

[2] While a decision denying a party's summary judgment motion ordinarily is not a final, appealable order, R.C. 2744.02(C) provides that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."

material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶12} Accordingly, trial courts may not grant summary judgment unless the evidence demonstrates that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and after viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429-430, 1997-Ohio-259, 674 N.E.2d 1164.

R.C. CHAPTER 2744

{¶13} R.C. Chapter 2744 establishes a three-step analysis to determine whether a political subdivision is immune from liability. See, e.g., *Cramer v. Auglaize Acres,* 113 Ohio St.3d 266, 270, 2007-Ohio-1946, 865 N.E.2d 9, at ¶ 14. First, R.C. 2744 .02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. See, e.g., *Cramer*; *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, at ¶ 7; *Harp v. Cleveland Hts.* (2000), 87 Ohio St.3d 506, 509, 2000-Ohio-467,  721 N.E.2d 1020. The statute states: "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶14} Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). See, e.g., *Cramer*; *Ryll v. Columbus Fireworks Display Co.*, 95 Ohio St.3d 467, 470, 2002-Ohio-2584, 769 N.E.2d 372, at ¶ 25. Pertinent to the case sub judice, R.C. 2744.02(B)(2) states:

"Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

{¶15} Finally, if liability exists under R.C. 2744.02(B), R.C. 2744.03(A) sets forth several defenses that re-instate a political subdivision's immunity. See *Cramer* at ¶ 16; *Colbert* at ¶ 9. In the case at bar, Appellant seems to suggest that R.C. 2744.03(A)(5) applies, which states: "The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

Whether a political subdivision is entitled to statutory immunity under R.C. Chapter 2744 presents a question of law. See, e.g., *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 1992-Ohio-133, 595 N.E.2d 862; *Murray v. Chillicothe*, 164 Ohio App.3d 294, 2005-Ohio-5864, 842 N.E.2d 95 at ¶ 11.

{¶16} In the case sub judice, the parties do not dispute that Appellant is entitled to the general grant of immunity under R.C. 2744.02(A)(1). Instead, the dispute focuses on whether the R.C. 2744.02(B)(2) exception to immunity applies, and, if so, whether R.C. 2744.03(A)(5) re-instates immunity.

R.C. 2744.02(B)(2)

{¶17} R.C. 2744.02(B)(2) subjects a political subdivision to liability for "the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Thus, before this provision removes a political subdivision's immunity, a plaintiff must demonstrate that the political subdivision's employees negligently performed a proprietary function. Accordingly, before R.C. 2744.02(B)(2) will remove a political subdivision's immunity, the plaintiff must establish: (1) the elements required to sustain a negligence action-duty, breach, proximate cause, and damages; and (2) that the negligence arose out of a "proprietary function." See, generally, *Gabel v. Miami E. School Bd.* 169 Ohio App.3d 609, 2006-Ohio-5963, 864 N.E.2d 102, at ¶ 39-40. A "proprietary function" includes "[t]he maintenance, destruction, operation, and upkeep of a sewer system." R.C. 2744.01(G)(2)(d).

{¶18} Under R.C. 2744.02(B)(2), a political subdivision cannot be held liable for the negligent performance of acts by their employees with respect to a governmental function. A "governmental function" includes "[t]he provision or nonprovision, planning or design, construction or reconstruction of * * * a sewer system." R .C. 2744.01(C)(2)(l).  In the case at bar, the initial inquiry is whether Appellee's allegations are based upon Appellant negligent performance of the maintenance, operation, or upkeep of the sewer system, or whether they are based upon Appellant planning or design, construction or reconstruction of the sewer system.

{¶19} First, Appellant contends that the flooding on Appellee's property was caused by the "storm drainage system" not the sanitary sewer system.  Appellee conceded this in her deposition.  Further, a review of the record reveals that although the parties and the trial court refer to it by various different names, including a sewer, storm sewer, storm drainage system, storm sewer line, storm drain and catch basin, they are referring to the same thing, which we will call the "storm drainage system," as opposed to the sanitary sewer system.  Additionally, our review of the pertinent case law in this area reveals that storm drainage systems, like the one at issue herein, are analyzed under the same framework as sanitary sewer systems for purposes of applying R.C. Chapter 2744's grant of sovereign immunity.

See, generally, *Ivory v. Township of Austintown*, Mahoning App. No.
10MA106, 2011-Ohio-3171 (equating duty to maintain sewer with duty to
maintain storm water catch basin); *Martin v. Gahanna*, Franklin App. No.
06AP1175, 2007-Ohio-2651 (determining maintenance of a storm water
system to be a proprietary function).

{¶20} Next, Appellant contends that the flooding on Appellee's
property was caused by an improperly designed storm drainage system and
as a result it is immune from liability under R.C. 2744.02, citing *Spitzer v.
Mid Continent Construction Co., Inc*., Cuyahoga App. No. 89177, 2007-
Ohio-6067 and *Ferguson v. Breeding*, (Aug. 25, 2000) Lawrence App. No.
99CA22, 2000 WL 1234262 in support. *Spitzer* and *Ferguson* dealt with the
design and construction of "storm sewers" and "storm water runoff systems"
and both held that municipalities were immune from liability for improperly
designed sewers inadequate to handle increased storm runoff. Appellant
also points to the affidavit of Mayor Funk in support of its argument that the
root of the flooding was the design and construction of the original storm
drainage system, coupled with the unusually high amount of rainfall.
Finally, relying on the Mayor's affidavit, Appellant argues that even if the
storm drainage system had been totally operational it would not have been

able to handle the total amount of rainfall that occurred prior to and leading up to Appellee's injury.

{¶21} Appellee contends on appeal, as she contended below, that the case sub judice is about negligent maintenance, which she argues is not a discretionary function, and for which Appellant has no immunity. Specifically, Appellee contends that Appellant was put on notice of maintenance and clogging problems with the storm drain at issue as early as 2005 and never adopted a maintenance plan. Appellee further argues that municipalities cannot escape liability by asserting the exercise of discretion or judgment in weighing fiscal priorities because maintenance is mandatory and does not involve discretion, relying on *City of Portsmouth v. Mitchell Mfg. Co.* (1925), 113 Ohio St. 250, 148 N.E. 846, in support.

{¶22} Thus, Appellee essentially argues that Appellant was not immune from liability under R.C. 2744.02 because it negligently performed a proprietary function, specifically the maintenance of its storm drainage system, under R.C. 2744.02(B)(2). Appellant further argues that because such maintenance was mandatory and did not involve the exercise of judgment or discretion, immunity was not reinstated under R.C. 2744.03(A)(5).

{¶23} Ohio courts have long recognized that a city can be liable for the negligent maintenance of its sewers. See *Mitchell Mfg. Co.*, supra, at 255; *Kiep v. Hamilton* (May 19, 1997), Butler App. No. CA96-08-158, 1997 WL 264236 ("[I]f a city accepts the responsibility to maintain a sewer and is then negligent in its inspection and/or maintenance of the sewer, the city may be liable for damages proximately caused by its negligence."); see, also, *Essman v. City of Portsmouth*, Scioto App. No. 09CA3325, 2010-Ohio-4837, at ¶ 31. In *Mitchell Mfg. Co*., the Supreme Court of Ohio held as follows in its syllabus:

"The operation and upkeep of sewers by a municipality is a proprietary function.

When a municipal corporation assumes the control and management of a storm sewer which has been constructed in a public street under its supervision, it is bound to use reasonable diligence and care to see that such storm sewer is not clogged with refuse, and is liable for negligence in the performance of such duty to a property owner injured thereby, after reasonable notice of the clogged condition of such sewer."

{¶24} In *Mitchell*, it was alleged that the city failed to maintain a storm sewer located in front of Mitchell's property. Specifically, it was alleged that after cleaning out the storm sewer in question, the city permitted

refuse gathered from catch basins to stand on the street in piles, and that each time it rained the refuse would wash back in to the catch basin. Id. at 253. Under this fact pattern, which like the case sub judice involved unprecedented rainfall, the Court found that not only did the city omit to perform a duty, it found a positive act by the city resulting in accumulation of refuse in the sewer, which it reasoned constituted a nuisance. Id. Further, the *Mitchell* court noted that "the operation and upkeep of sewers is not a governmental function, but is a ministerial or proprietary function of the city." Id. at 255.

{¶25} The court later announced a similar rule in *Doud v. Cincinnati* (1949), 152 Ohio St. 132, 137, 87 N.E.2d 243:

"A municipality is not obliged to construct or maintain sewers, but when it does construct or maintain them it becomes its duty to keep them in repair and free from conditions which will cause damage to private property * * *. The municipality becomes liable for damages caused by its negligence in this regard in the same manner and to the same extent as a private person under the same circumstances."

{¶26} "Determining whether an allegation of negligence relates to the maintenance, operation, or upkeep of a sewer system or, instead, the design, construction, or reconstruction of a sewer system is not always a simple

inquiry." *Essman*, supra, at ¶ 32.  However, bearing in mind that the facts sub judice are strikingly similar to the facts presented in *Mitchell*, supra, we conclude that the allegations set forth in Appellee's complaint properly allege negligent maintenance, rather than negligent design.  Further, based upon the record before us, we conclude that Appellee has presented evidence which, if proven, would establish that Appellant negligently maintained the storm drainage system.

{¶27} This conclusion is supported by Appellee's deposition testimony wherein she described Appellant's maintenance practices with regard to the storm drainage system at issue.  Specifically, Appellee testified that Appellant properly maintained the drain until 2005.  After that, it only cleaned out the drain when Appellee would call and complain that it was clogged.  Further, Appellee testified that when Appellant would come and clean out the drain, it would leave all of the refuse, sand, etc. collected in the drain sitting in a pile right beside the drain.  As a result, each time it rained, the refuse and sand, along with water, would flow onto Appellee's property. It was this very situation that occurred on the day of Appellee's injury.  As Appellee explained in her deposition, while walking to her vehicle, her foot became stuck or lodged into the wet, sandy substance that had accumulated onto her property during the rain and she fell.

{¶28} In light of these facts, we reject Appellant's contention that the flooding problem stemmed from negligent design rather than negligent maintenance. Further, we reject as merely conclusory the portion of Mayor Funk's affidavit which states that the drain would not have been able to handle the extent of the rainfall even it had been fully operational. Instead, we conclude that had Appellant provided regular maintenance to the drain, it likely would not have been clogged beyond correction when Appellant tried to clean it out on March 22, 2007, just a few days prior to Appellee's injury.

{¶29} Further, we reject Appellant's contention that it was immune from liability because its decisions regarding the storm drainage system involved the exercise of discretion or judgment, as referenced in R.C. 2744.03(A)(5). Specifically, in its motion for summary judgment, Appellant stated as follows:

"Throughout 2006 and 2007, the Village of Glouster had to determine, on a regular basis, which areas of the storm drainage system needed the most repair and replacement, as there was more work needed on the storm drainage system then [sic] the Village had manpower or money. (Affidavit of Robert Funk). Accordingly, there were regular discretionary decisions that had to be made as to which area to fix first and where would be the most effective use of the funds available. (Affidavit of Robert Funk)."

While we understand that Appellant had limited resources, that fact does not relieve it from its duty to maintain its storm drainage system.

{¶30} In *Malone v. City of Chillicothe*, Ross App. No. 05CA2869, 2006-Ohio-3268, this Court recently considered and rejected a similar argument. The trial court denied the city's motion for summary judgment claiming it was entitled to sovereign immunity related to a claim that sewage backup caused problems to Malone's property, despite the city's contention "that its decision regarding the maintenance of its sewer system, including whether a particular line needed to be replaced or repaired, involved the exercise of discretion." ¶ 4-5.[3] On appeal, the city argued that it was entitled to statutory immunity under R.C. 2744.03(A)(5), which it claimed absolved it from liability for decisions regarding the repair of the sewer system. In particular, and much like Appellant's current argument on appeal, the city argued that decisions regarding repair of the sewer system "involved the exercise of judgment or discretion in determining how to use personnel and resources." Id. at ¶ 8. In response to the city's argument, we concluded that "the city's decision regarding the sewer repair does not involve the creative exercise of political judgment that goes to the heart of

---

[3] In *Malone*, the city conceded that R.C. 2744.02(B)(2) applied and excluded it from the general grant of immunity. Thus, the only issue on appeal was whether the city's decision regarding maintenance of the sewer involved the exercise of judgment or discretion regarding the allocation of personnel and financial resources providing it with an immunity defense under R.C. 2744.03(A)(5). *Malon*e at ¶ 12.

government. Its decision regarding whether, when, and how to comply with its duty to maintain the sewer does not fall within the R.C. 2744.03(A)(5) exception." Id. at ¶ 20. We find the reasoning in *Malone* to be persuasive and applicable to the case presently before us. Thus, based upon the foregoing reasoning, R.C. 2744.03(A)(5) would not re-instate Appellant's immunity.

{¶31} As such, we find that the proper maintenance of a sewer or in this case, a storm drainage system, is a proprietary act, which is mandatory and not discretionary. If proven, Appellant's negligent performance of its proprietary function of maintaining its storm drainage system would expose it to liability under R.C. 2744.02(B)(2), and immunity could not be re-instated under R.C. 2744.03(A)(5). Thus, we conclude that the trial court did not err in determining that genuine issues of material fact exist and that Appellant was not entitled to summary judgment as to the issue of immunity. Accordingly, Appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

{¶32} In its second assignment of error, Appellant contends that because it is immune from liability, this Court need not determine whether its acts were reckless. Appellant's claim is based upon its argument that it is immune from liability under R.C. 2744.02, and that the exception to

immunity contained in R.C. 2744.02(B)(2), as discussed at length above, does not apply. However, in light of our disposition of Appellant's first assignment of error, which found Appellant was not immune from liability, we reject the premise upon which Appellant's argument is based. Further, Appellant confuses the application of the pertinent statutes with respect to when an analysis of recklessness is required.

{¶33} Specifically, R.C. 2744.02(A)(1) provides a general grant of immunity to political subdivisions in its exercise of governmental and proprietary functions. R.C. 2744.02(B)(2) contains an exception to the general grant of immunity when the political subdivision acts negligently in the performance of a proprietary function. Further, R.C. 2744.03(A)(1) through (5) provides a mechanism by which a political subdivision may re-establish its nonliability. Pertinent herein, R.C. 2744.03(A)(5) provides as follows:

"The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶34} As set forth above, we determined that the maintenance of a storm drainage system is a proprietary function, which is mandatory and not discretionary. Further, we determined that Appellee had alleged sufficient facts which, if proven, would demonstrate Appellant was negligent in failing to maintain the storm drainage system. As such, we concluded that the trial court properly denied Appellant's motion for summary judgment on the issue of immunity.

{¶35} However, Appellant seems to contend that it is nevertheless immune from liability because Appellee's alleged injury resulted from Appellant's exercise of judgment or discretion, specifically its discretion in how to determine to allocate financial resources to repair and/or replace the storm drainage system at issue. However, as set forth above, we rejected Appellant's contention that its duty to maintain the storm drainage system constituted the type of discretionary decision or exercise of judgment contemplated under R.C. 2744.03(A)(5) which would re-establish its immunity.

{¶36} Thus, while we agree with Appellant's assertion that there is no need to determine whether its actions were reckless, we reach that conclusion for different reasons. In particular, if it is proven that Appellant negligently maintained its storm sewer system, the maintenance of which is

a proprietary function, because that function is mandatory and did not involve the exercise of judgment or discretion, Appellant's immunity from liability would not be re-instated under R.C. 2744.03(A)(5).  As such, we need not reach the question of whether Appellant's actions were exercised with malicious purpose, in bad faith, or in a wanton or reckless manner, as set forth in R.C. 2744.03(A)(5).  Accordingly, Appellant's second assignment of error is sustained to the extent that it simply argues that we do not reach the issue of whether Appellant's conduct was reckless.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, P.J., and Kline, J.: Concur in Judgment and Opinion.

For the Court,

BY:  _____
          Matthew W. McFarland, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**